**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: ROPER & TWARDOWSKY, LLC<br><br>Debtor. | Lead Case No. 16-cv-3013 (SDW)<br><br>Consolidated with:<br>16-cv-3023; 16-cv-3062;<br>16-cv-3063; 16-5485<br><br>**OPINION**<br><br>December 14, 2016 |

**WIGENTON**, District Judge.

Before this Court are 1) Roper and Twardowsky Qualified Settlement Fund ("QSF") and Angela Roper's ("Roper") (collectively "Trust Appellants") Motion for Leave to Appeal the Bankruptcy Court's May 11, 2016 Order ("Retention Order") and May 11, 2016 Supplemental Opinion ("Supplemental Opinion"), and 2) Brach Eichler LLC's ("Brach Eichler") Appeal of the Bankruptcy Court's August 23, 2016 Order and August 18, 2016 Opinion. Jurisdiction is proper pursuant to 28 U.S.C § 158(a)(1). The motion and appeal are decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, this Court **DISMISSES AS MOOT** the Motion for Leave to Appeal, **AFFIRMS** the Bankruptcy Court's Retention Order and Supplemental Opinion, and **AFFIRMS** the Bankruptcy Court's August 23, 2016 Order and August 18, 2016 Opinion.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

1

The Court writes only for the parties and, therefore, sets out only those facts relevant to the matters before it. Roper & Twardowsky, LLC ("Debtor"), along with other counsel, previously represented plaintiffs in *In re: Prudential Life Insurance Company of America Tort Litigation*, Master Docket No. BER-L-2251-10, a mass tort action filed in the Superior Court of New Jersey ("State Court Action"). As part of the settlement of the State Court Action, the QSF was created on December 20, 2013 to disburse the settlement proceeds and Roper was appointed as Trustee. (Record on Appeal ("ROA"), Ex. A, Tab 2 Doc. 18-2.) The settlement agreement provides that the QSF be administered according to the terms of its Trust Agreement and "Internal Revenue Code Section 468B and Treasury Regulation Section 1.468B-1 through 1.468B-5," which require, in relevant part, that the state court retain jurisdiction over the QSF. (*Id.*) The Trust Agreement also grants the Trustee authority to "select and hire independent counsel" subject to court approval. (ROA Ex. A, Tab 2, Section 9; Tab 17 at 12.) On or about November 2015, all claims in the State Court Action were paid. (ROA Ex. A, Tab 3 Doc. 29 at 8.) At that point, the funds remaining in the QSF were designated solely for the payment of attorneys' fees and costs arising out of that litigation.[1]

On December 4, 2015, Debtor voluntarily filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of New Jersey. (ROA Ex. A, Tab 1.) On January 11, 2016, Judge Brian R. Martinotti, who oversaw the State Court Action, ordered the transfer of the "funds presently held in the QSF" to the Clerk of the Bankruptcy Court and further ordered that "any requests for disbursements shall be filed before" Judge Stacey L. Meisel, the judge overseeing the bankruptcy matter, with a copy sent to Judge Martinotti ("January 11th Order"). (ROA Ex. A,

---

[1] After the QSF's inception, Gorman & Gorman, LLC, Bendit Weinstock, P.A., and Bochetto & Lentz, P.C. (collectively, "Claimants") filed petitions in state court demanding payment of attorneys' fees and costs for their work in the State Court Action, and disbursement of fees from the QSF. Claimants later removed those claims to the Bankruptcy Court as adversary proceedings. (ROA Ex. A, Tab 17 at 8-9; AROA Exs. 1, 3, 4.)

Tab 8.)  A total of $7,800,494.00 was deposited with the Bankruptcy Court on January 14, 2016 (the "Funds").  (ROA Ex. A, Tab 2 Doc. 18-2 at 24.)  The matter was converted to a Chapter 7 case on February 23, 2016.  (ROA Ex. A, Tab 5.)

On April 21, 2016, the Trust Appellants applied to retain Brach Eichler to represent them in Adversary Proceedings in the Bankruptcy Court, including a pending motion to abstain/remand and a motion to terminate the QSF or to remove Roper as Trustee.  (ROA Ex. A, Tab 9.)  On May 9, 2016, Judge Meisel issued an oral opinion on the retention application.  ("May 9th Opinion").  (ROA Ex. A, Tab 17.)  In that opinion, Judge Meisel noted that Roper and the QSF were dismissed from the Adversary Proceedings and would no longer need counsel in those matters.  (*Id.* at 12-14.)  On May 11, 2016, Judge Meisel issued the Retention Order granting in part and denying in part the application to retain Brach Eichler.  (ROA Ex. A, Tab 18.)  The Retention Order approved Brach Eichler as counsel only "for work performed in defending the *Joint Motion to Terminate the Roper & Twardowsky QSF or Remove Angela Roper as Trustee* prior to the withdrawal of that Motion" and required Brach Eichler to submit a fee application with the Bankruptcy Court "for approval of its fees subject to the standards set forth in the Bankruptcy Code."  (*Id.* (emphasis in original).)  The Retention Order also explicitly required that, "to the extent Roper, as Trustee, and or the [QSF] seek to retain Brach Eichler L.L.C. for any other services . . . Brach Eichler L.L.C. shall submit a Retention Application to this Court explicitly stating the scope of the proposed representation."  (*Id.*)

In a Supplemental Order on May 11, 2016, Judge Meisel clarified and expanded upon her May 9th Opinion only as to the Bankruptcy Court's jurisdiction.[2]  (ROA Ex. A, Tab 20.)  Judge

---

[2] Judge Meisel indicated that because she "never addressed the jurisdiction arguments" during the May 9th hearing, she believed it "necessary to supplement the decision from May 9, 2016 to address jurisdiction, even though the parties reached an agreement on certain issues and appeared to accept my ruling on retention and the need to submit

3

Meisel held that the Bankruptcy Court had exclusive jurisdiction over the Funds and concurrent related-to jurisdiction over the QSF.  (*Id.*)

On May 25, 2016, the Trust Appellants sought leave to appeal Judge Meisel's Retention Order and Supplemental Opinion in this Court.  (Civil Action Nos. 16-3013, 16-3023, 16-3062, and 16-3063).[3]  The following day, Brach Eichler filed a First Interim Application for Allowance of Fees and Expenses ("First Application") in the amount of $33,894.81.  (Amended Record on Appeal ("AROA") Ex. 27.)  On July 6, 2016, Brach Eichler filed a Second Interim Application for Allowance of Fees and Expenses in the amount of $61,479.33.  (AROA Ex. 33.)  The Chaper 7 Trustee and Debtor's creditors objected to the Second Application, arguing that the work exceeded the Bankruptcy Court's Retention Order.  (AROA Ex. 34 at 9-10.)  On August 2, 2016, Roper terminated Brach Eichler as counsel.  (AROA Ex. 39 at 18.)  At the request of the Bankruptcy Court, Brach Eichler filed a formal motion to withdraw on August 5, 2016, and its motion was granted on August 11, 2016.  (AROA Ex. 37, 39 at 18-19.)

On August 16, 2016, after Brach Eichler had withdrawn as counsel, Judge Meisel heard oral argument on its applications for fees and expenses and, on August 18, 2016, rendered an oral opinion.  (AROA Ex. 39.)  After reviewing the fees pursuant to the standards set forth in the bankruptcy code for reasonableness, Judge Meisel granted Brach Eichler's First Application.[4]  (AROA Ex. 39 at 25.)  Judge Meisel also granted the Second Application insofar as it sought fees and expenses incurred prior to May 9, 2016.  She denied the "majority of services" sought in

---

fee applications to this court for approval of any fees, and requested clarification of the terms of my decision." (ROA Ex. A, Tab 20 at 2.)

[3] Motions for leave to appeal were filed in Civil Action Nos. 16-3013, 16-3023, and 16-3063, but not in 16-3062. Identical Notices of Appeal were filed in all four cases.  All four matters were consolidated under 16-3013 on July 12, 2016.  (Dkt. No. 9.)

[4] Judge Meisel reduced the amount sought from $33,164.50 to $32,512.00 to reflect an adjustment to attorney Carl J. Sorrano's hourly rate from $495 (the rate listed in the First Application) to $470 (the rate listed in the retention application). (AROA Ex. 39 at 7 lines 16-23, at 24 lines 8-25, at 25 lines 1-7; Ex. 40.)

Second Application, finding the request "directly contravene[d] this Court's May 11, 2016 retention order for Brach Eichler limiting the work to work already performed on behalf of the QSF and [Roper] up until May 9, 2016." (AROA Ex. 39 at 26.) Judge Meisel also refused to approve the services *nunc pro tunc*. On August 23, 2016, Judge Meisel ordered the Clerk of the Court to pay Brach Eichler a total of $49,925.77 from the Funds "in payment of the compensation and expenses" sought in the First and Second Applications. (AROA Ex. 40.)

On September 9, 2016, Brach Eichler filed a Notice of Appeal of Judge Meisel's August 18th Opinion and August 23rd Order which was consolidated under Civil Action 16-3013 on October 3, 2016. (Civil Action No. 16-5485 (Dkt. No. 3).)

## II.   LEGAL STANDARD

This Court reviews the Bankruptcy Court's "factual findings for clear error and its exercise of discretion for abuse thereof." *In re Am. Pad & Paper Co.*, 478 F.3d 546, 551 (3d Cir. 2007) (internal citations omitted); *see also Cooper Elec. Supply Co. v. Linear Elec. Co.*, No. 15-cv-6429(SDW), 2016 WL 781770 at *2 (D.N.J. Feb. 29, 2016). A factual finding is clearly erroneous if, in reviewing all the evidence, the reviewing court is left with the "definite and firm conviction that a mistake has been committed," even if there is evidence to support the finding. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d. Cir. 1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d. Cir. 1999). Additionally, this Court reviews the Bankruptcy Court's conclusions of law *de novo*. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1222-23 (3d Cir. 1989).

## III.   DISCUSSION

A. <u>May Retention Order and Supplemental Opinion</u>

5

This Court first addresses the Motion for Leave to Appeal the Bankruptcy Court's Retention Order and Supplemental Opinion. Although the Retention Order and Supplemental Opinion were interlocutory when issued[5] and would not ordinarily be appealable, given that 1) the validity of the order and opinion are inextricably tied to the appeal of the Bankruptcy Court's August decisions, 2) the jurisdictional question at issue has been briefed by the parties, and 3) Brach Eichler is no longer a party to the Adversary Proceedings as of August 3, 2016 making all rulings as to that entity final, this Court will dismiss the Motion for Leave to Appeal as moot,[6] and address the merits of the appeal of the Retention Order and the Supplemental Opinion.[7]

Trust Appellants first contend that the Bankruptcy Court's Supplemental Opinion incorrectly held that court had "concurrent related to jurisdiction" over the QSF. Although Judge Martinotti's December 20, 2013 Order creating the QSF indicates that the state court "shall retain jurisdiction over the" QSF pursuant to Treasury Regulation 1.468B-1(c)(1) which provides that a trust is "subject to the continuing jurisdiction" of the government authority that established the trust, *see* 26 C.F.R. § 1.468B-1(c)(1), neither the order nor the regulation claim exclusive jurisdiction over the QSF. (ROA Ex. A, Tab 2, Doc 18-2 at 7-8.) Therefore, nothing in the creation of the QSF precludes the Bankruptcy Court's concurrent jurisdiction. In addition, the Bankruptcy

---

[5] Although the Third Circuit has adopted a flexible standard of finality in certain complex bankruptcy matters, *see, e.g.*, *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1993) (noting that "courts have permitted appellate review of orders that in other contexts might be considered interlocutory"), the more traditional standard of finality is applicable here where the opinion and order did not resolve the Adversary Proceedings nor are the issues at hand unique to bankruptcy. *See, e.g., In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (noting that "[o]rders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine civil litigation").

[6] Appellees Gorman & Gorman, LLC; Bendit Weinstock, P.A., Bochetto & Lentz P.C., William Skepneck, and Steven M. Smoot state in their brief that they seek to dismiss the Trust Appellants' Motion for Leave to Appeal, but no such motion is currently before this Court. (Opp. Br. at 21.) If such a motion were pending, this Court would dismiss it as moot for the reasons stated above.

[7] The appeal itself is also before this Court because Appellants filed motions for leave to appeal and notices of appeal in the consolidated cases, as well as a record on appeal. Trust Appellants also note that their "legal argument supporting the request for leave to appeal shall also serve as support for [Trust] Appellants arguments in support of the appeal itself." (Mot. Leave to Appeal at 1.)

Court has "related to" jurisdiction over "'non-core' proceedings otherwise related to a case under title 11 and whose outcome could conceivably have an effect on the administration of the bankruptcy estate." *In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 120 (D.N.J. 2003) (internal citations omitted); *see also In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009); 28 U.S.C. §1334. Related to jurisdiction exists where a proceeding may affect "the debtor's rights, liabilities, options or freedom of action" or the "handling and administration of the bankrupt estate." *In re Marcus Hook Dev. Park*, 943 F.2d 261, 264 (3d Cir. 1991) (internal citations omitted). Here, any action on the part of the QSF which affects the Funds has an effect on the Debtor's estate. The hiring of counsel for the purposes of representing the QSF is such an action. Accordingly, this Court finds that Judge Meisel properly held that the Bankruptcy Court has concurrent related to jurisdiction "to act as a court of competent jurisdiction to make a determination on whether to approve counsel hired by" the Trust Appellants. (ROA Ex. A, Tab 20 at 5.)

This Court is also satisfied that the Bankruptcy Court correctly held that it has exclusive jurisdiction over the Funds. The Bankruptcy Court has exclusive jurisdiction over the assets of an estate. *See* 28 U.S.C. § 1334(e). Debtor's counsel has admitted that the Funds are property of the estate. (ROA Ex. A Tab 20 at 3.) Further, the record establishes 1) that the Funds are a portion of the State Court Action settlement designated to pay counsel, 2) Debtor was counsel in the State Court Action and hired co-counsel to assist it, and 3) various rulings at the state court level determined that Debtor is "entitled to all of the Funds for attorneys' fees and Debtor's co-counsel simply have claims against the Debtor." (ROA Ex. A Tab 20 at 3.) Therefore, the Bankruptcy Court has exclusive jurisdiction over the Funds as an asset of Debtor's estate. It is clear that this was Judge Martinotti's understanding as well, otherwise his January 11th Order depositing the

Funds with the Bankruptcy Court and directing counsel to file requests for disbursements to Judge Meisel would serve no purpose.[8]

Therefore, because the Bankruptcy Court did not err in holding it has concurrent jurisdiction with the state court over the QSF and exclusive jurisdiction over the Funds and this Court will affirm the Retention Order and the Supplemental Decision.

B.  Appeal of August Order and Opinion

Brach Eichler's appeal of the Bankruptcy Court's August 18th Opinion and August 23rd Order is a challenge to that court's interpretation of its earlier Retention Order which this Court reviews for an abuse of discretion.  *See, e.g.*, *In re Shenango Grp., Inc.*, 501 F.3d 338, 345-346 (3d Cir. 2007) (noting that "by virtue of its direct involvement in the proceedings" it is appropriate to give "great weight" to "a bankruptcy court's interpretation of its own order");  *In re Trade Secret Inc.*, 609 Fed. Appx. 98, 102 (3d Cir. 2015) (reviewing the bankruptcy court's interpretation of its prior order for abuse of discretion).  This Court reviews the Bankruptcy

---

[8] This Court finds no merit in Trust Appellants' argument that the *Princess Lida* or *Rooker-Feldman* doctrines bar the Bankruptcy Court from exercising jurisdiction over the QSF and/or the Funds. The *Princess Lida* doctrine applies only when "(1) the litigation in both the first and second fora are *in rem* or *quasi in rem* in nature, and (2) the relief sought requires that the second court exercise control over the property in dispute and such property is already under the control of the first court." *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 176 (3d Cir. 1993).  Here, the Funds were deposited with the Bankruptcy Court and are no longer under the control of the state court.

The *Rooker-Feldman* doctrine "applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Harris v. Brody*, 317 Fed. Appx. 153, 155 (3d Cir. 2008).  There is no such injury here. The Trust Appellants argue that the doctrine "precludes the Bankruptcy Court from disregarding the December 20th Order establishing the QSF." (Mot. Leave to Appeal at 14.)  However, there is no indication that the Bankruptcy Court disregarded any aspect of the creation of the QSF and because the QSF was created via settlement, not litigation, there is no "loss" for this Court to review. The *Rooker-Feldman* doctrine is simply inapplicable.

Nor will this Court consider Trust Appellants' abstention arguments. They were not raised in the proceedings below and, thus, are not ripe for consideration. This Court will note, however, that there is no indication that Trust Appellants ever sought confirmation or guidance from the state court regarding the extent of its jurisdiction over the QSF or the Funds or sought to bring an action before that court.  If, as Trust Appellants believe, the state court has exclusive jurisdiction over the QSF and the Funds, it is curious that they have not sought relief there.

Court's denial of *nunc pro tunc* retention of a professional for abuse of discretion as well. *In re Arkansas Co., Inc.*, 798 F.2d 645, 650 (3d Cir. 1986).

Here, the Bankruptcy Court's Retention Order, which memorialized the Bankruptcy Court's May 9th Opinion, unambiguously limited Brach Eichler's retention to "defending the *Joint Motion to Terminate the [QSF] or Remove [Roper] as Trustee* prior to the withdrawal of that Motion." (ROA Ex. A at Tab 18 (emphasis in original).) The Retention Order did not approve the firm as counsel for any other purpose, and explicitly provided that "to the extent [Roper and/or the QSF] seek to retain Brach Eichler for any other services, other than what this Court has Ordered herein, [the firm] shall submit a Retention Application to this Court explicitly stating the scope of the proposed representation." (*Id.*)

It is also clear that Brach Eichler understood the parameters of the Retention Order. During the May 9th proceedings, a member of the firm, Carl Sorrano, had the following exchange with the court:

> Mr. Sorrano: Your Honor, on the order that was just entered can I ask for some clarification?
>
> The Court: Sure.
>
> Mr. Sorrano: Because I just want to be clear that Brach Eichler is retained for the purposes set forth in the order for all the work up to today.
>
> The Court: Subject to fee application and a reasonableness standard.
>
> Mr. Sorrano: Right.
> . . .
> Mr. Sorrano: All Right. The other clarification, Your Honor, is I guess to the extent that the Trustee, in this case Ms. Roper, using the convention that Your Honor set forth in the order, in the event that Ms. Roper or the Fund wants to seek Brach Eichler or any other law firm's representation for that matter concerning any administrative work for the Trust, additional retention applications can be filed with this Court?
>
> The Court: That is correct.

9

> . . .
>
> Mr. Sorrano: . . . And I think the last thing I want clarification on is that as I heard the order, if Ms. Roper or the Trust wants to retain counsel, whether that be Brach Eichler or anyone else for that matter, here, on behalf of the Trust or the QSF for any reason in this bankruptcy court, they may retain counsel but it will not be paid for, at least at this initial juncture, by the Trust?
>
> The Court: That is correct. So what I would suggest in that situation is that to the extent that Ms. Roper thinks in the future that she is going to seek again to have counsel paid from money held by the bankruptcy court that the issue needs to be in front of the Court before counsel does much at all because as we stand here today I am denying any future retention that has been set out today. . .
>
> Mr. Sorrano: Right. So I understood you perfectly.
>
> (AROA Ex. 39 at 10-12.)

Not only was the Bankruptcy Court's Retention Order clear on its face, the record also reflects that Brach Eichler understood the Court's ruling "perfectly." Brach Eichler, however, continued to work for the Trust Appellants after May 11, 2016 without seeking permission from the Bankruptcy Court to expand the scope of its representation.[9] Given the explicit nature of the Bankruptcy Court's Retention Order, Brach Eichler did so at its own risk. There is nothing to suggest that the Bankruptcy Court abused its discretion in denying payment for work that was outside the scope of the Retention Order. The Bankruptcy Court was neither arbitrary nor unreasonable. Indeed, it granted Brach Eichler's First Application finding that that work was within the scope of the firm's retention and authorized payment for a portion of work contained in the Second Application that also had been preapproved. (AROA Ex. 39 at 26-17.)

---

[9] This Court is unpersuaded by Brach Eichler's argument that it was not required to seek approval for its additional work because Roper, as trustee to the QSF had authority hire counsel pursuant to the terms of the Trust Agreement. (ROA Ex. A, Tab 2, Doc. 18-2 at 10.) That is true, but the Trust Agreement also indicates that a court must approve the retention of counsel as does the Retention Order. (*Id.*)

10

Nor did the Bankruptcy Court abuse its discretion in denying to approve Brach Eichler's retention and related fees *nunc pro tunc*. Courts generally must approve a debtor's retention of professionals before services are performed. *See, e.g.*, *In re Arkansas Co., Inc.*, 798 F.2d 645, 648 (3d Cir. 1986); *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 106 (3d Cir. 1988). Retroactive approval of retention and related fees is only permissible where the court is satisfied, 1) that it would have granted approval if it had been sought in a timely fashion, which "entails a determination that the applicant satisfied the statutory requirements of 11 U.S.C. § 327(a) and 1103(a)," and 2) the circumstances "adequately excuse the failure to have sought prior approval." *In re Arkansas Co., Inc.*, 798 F.2d at 650. In order to avoid intentional circumvention of the statutory requirement for preapproval, *nunc pro tunc* approval is only warranted in "extraordinary circumstances." *Id.*

As noted above, the Bankruptcy Court found that "it would have likely approved the services that Brach Eichler performed on behalf of the QSF and the QSF Trustee had Brach Eichler sought prior approval." (AROA Ex. 39 at 29, lines 1-20.)[10] However, because Brach Eichler was on notice as of May 9, 2016 that it would be required to seek approval to expand its retention, yet failed to do so until August 2016, the Bankruptcy Court found that Brach Eichler failed to show extraordinary circumstances sufficient to excuse its "failure to seek prior approval of this Court to expand its retention." (*Id.* at lines 23-25.) The Bankruptcy Court recognized that "the time limitations for filing a Notice of Appeal are very short and may have caused a problem

---

[10] Although Brach Eichler devotes significant time arguing the nuances of bankruptcy law, specifically whether the reasonableness of the firm's fees should be evaluated under 11 U.S.C. § 330 or § 327 or New Jersey fiduciary law, this Court need not address those arguments here, as they miss the point. Judge Meisel stated that she likely would have approved Brach Eichler's fees had the firm submitted an additional application to expand the scope of their representation. (AROA Ex. 39 at 29 lines 1-20.) Brach Eichler was not denied fees because the Bankruptcy Court misapplied the law or misunderstood the nature of the firm's services. Rather, Brach Eichler was denied compensation because it failed to seek pre-approval of its retention.

in getting retention documents done within that window," but found those constraints did not constitute extraordinary circumstances justifying a three month delay in filing a third retention application. (AROA Ex. 29 at 2; Ex. 39 at 30.) Once again, the Bankruptcy Court provided clear guidance to Brach Eichler as to what was required in order to be compensated for additional work and Brach Eichler indicated it understood what was required, but failed to comply with the terms of the Retention Order. Courts must have the power to enforce their orders and litigants must adhere to them. As such, this Court finds that the Bankruptcy Court did not abuse its discretion in disallowing the payment of Brach Eichler's fees and expenses for work done after May 11, 2016 and affirms that court's August 18, 2016 Opinion and August 23, 2016 Order.

### IV. CONCLUSION

For the reasons set forth above, this Court **DISMISSES AS MOOT** the Motion for Leave to Appeal the Bankruptcy Court's Retention Order and Supplemental Opinion, **AFFIRMS** the Bankruptcy Court's Retention Order and Supplemental Opinion, and **AFFIRMS** the Bankruptcy Court's August 18, 2016 Opinion and August 23, 2016 Order. An Order consistent with this Opinion follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

Orig: Clerk
cc: Parties